[Cite as *State v. Barga*, 2018-Ohio-2804.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 17-17-14

    v.

ROBERT L. BARGA,

O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Shelby County Common Pleas Court
Trial Court No. 16CR000324

**Judgment Affirmed**

**Date of Decision:  July 16, 2018**

**APPEARANCES:**

    *Terrence K. Scott and Joseph Medici* **for Appellant**

    *Anne K. Bauer* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Robert L. Barga ("Barga") appeals the judgment of the Shelby County Court of Common Pleas for (1) entering convictions not based on sufficient evidence and (2) entering convictions against the manifest weight of the evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} In August of 2016, a number of local businesses in Shelby County reported to the police that they had received counterfeit bills. Doc. 154 at 196. On August 13, 2016, Barga contacted the police and informed them that a passenger in his car—Trisa Engle ("Engle")—was in possession of illegal contraband. *Id.* at 230. During this call, Barga and the police arranged for a sting operation. *Id.* Pursuant to this arrangement, Officer Tony Cunningham ("Cunningham") initiated a stop of Barga's vehicle. *Id.* at 225. A drug detection canine discovered contraband that Engle admitted belonged to her. *Id.* at 226. A subsequent search of Engle's person turned up several counterfeit bills. *Id.* at 228. Engle stated that these bills were her son's monopoly money but later informed the police that these were, in fact, counterfeit bills that had been printed by Barga. Doc. 155 at 10. Doc. 154 at 153.

**{¶3}** At 10:18 P.M. on December 5, 2016, an employee of Al's Pizza Place ("Al's Pizza") reported a counterfeit bill had been received at their restaurant. Doc. 154 at 202. At 12:37 A.M. on December 6, 2016, an employee of a different Al's Pizza location called the police to report that several counterfeit bills had been received at their restaurant. *Id.* At both of these locations, the counterfeit bills had been tendered to pizza delivery drivers. *Id.* at 192. The pizza delivery drivers could not identify the person who tendered these counterfeit bills as payment. *Id.*

**{¶4}** On December 8, 2016, Officer Jim Jennings ("Jennings") was called to a local restaurant because a person—Nick Harris ("Harris")—was lying face down at a table. Doc. 154 at 239. Harris was found to be under the influence of drugs and to be in possession of twenty-three counterfeit twenty-dollar bills. *Id.* at 239. Harris informed the police that these counterfeit bills came from Barga. Doc. 155 at 42. Based upon the reports from Harris and Engle, the police orchestrated a trash pull at Barga's residence on December 15, 2016. Doc. 154 at 153. The police found multiple counterfeit bills in Barga's trash. *Id.* at 154. The serial numbers of the counterfeit bills found at Al's Pizza were identical to the serial numbers on the counterfeit bills found in Barga's trash. *Id.* at 200-201, 203.

**{¶5}** After these discoveries, the police obtained a warrant to search Barga's residence. *Id.* at 165. During the search of Barga's residence, the police discovered a counterfeit five-dollar bill in Barga's bedroom. *Id.* at 165. Subsequently, Barga was interviewed by the police and admitted that he observed counterfeit money

being printed in his cousin's garage but denied printing the counterfeit bills himself. *Id.* at 166-167. Barga stated, to the police, that his fingerprints would be found on the counterfeit bills because he had handled them and that he took one of the printers used to produce counterfeit bills home with him. *Id.* at 167.

{¶6} On January 5, 2017, Barga was indicted with one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32; three counts of forgery in violation of R.C. 2913.31(A)(3); and one count of possessing criminal tools in violation of R.C. 2923.24. Doc. 5. On July 14, 2017, at the conclusion of his trial, the jury found Barga guilty of all counts. Doc. 87. Barga was sentenced on August 29, 2017. Doc. 114. Appellant filed his notice of appeal on September 8, 2017. Doc. 128. On appeal, appellant raises the following two assignments of error:

**First Assignment of Error**

**The trial court violated Robert L. Barga's right to due process and a fair trial when, in the absence of sufficient evidence, Mr. Barga was found guilty of Counts 2, 3, and 4 of forgery.**

**Second Assignment of Error**

**The trial court violated Mr. Barga's right to due process and a fair trial when it entered judgments of conviction for Counts 2 and 3 of forgery, which were against the manifest weight of the evidence.**

*First Assignment of Error*

**{¶7}** In this assignment of error, Barga argues that the second, third, and fourth counts charged against him were not supported by sufficient evidence. These three charges alleged that Barga was guilty of forgery.

Legal Standard

**{¶8}** "A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial." *State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 21 (3d Dist.), quoting *In re Swift*, 8th Dist. Cuyahoga No. 79610, 2002 WL 451226, *3 (Mar. 21, 2002). "The sufficiency of the evidence analysis addresses the question of whether adequate evidence was produced for the case to be considered by the trier of fact and, thus, whether the evidence was 'legally sufficient to support the verdict * * *.'" *State v. Campbell*, 3d Dist. Allen No. 1-17-23, 2017-Ohio-9251, ¶ 13, quoting *State v. Worthington*, 3d Dist. Hardin No. 6-15-04, 2016-Ohio-530, ¶ 12.

**{¶9}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Pierce*, 3d Dist. Seneca No. 13-16-36, 2017-Ohio-4223, ¶ 6, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 684

N.E.2d 668 (1997), fn. 4. "This analysis does not attempt to 'resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact.'" *Davis, supra*, at ¶ 13, quoting *State v. Eckard*, 3d Dist. Marion No. 9-15-45, 2016-Ohio-5174, ¶ 9.

{¶10} The sufficiency of evidence is a question of law and a "test of adequacy rather than credibility or weight of the evidence." *State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19.

> **The standard for sufficiency of the evidence 'is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.'**

*State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 8, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.). To obtain a conviction for forgery in violation of R.C. 2913.31(A)(3), the State had to establish that Barga (1) "[u]tter[ed], or possess[ed] with the purpose to utter, any writing that the person knows to have been forged" (2) with the purpose to defraud. R.C. 2913.31(A)(3). "'Utter' means to issue, publish, transfer, use, put or send into circulation, deliver, or display." R.C. 2913.01(H).

Legal Analysis for the Second and Third Counts of Forgery

{¶11} The second and third counts of forgery arose from the counterfeit bills that Al's Pizza received on December 5, 2016, and December 6, 2016. At trial, Detective Kevin Macke ("Macke") testified that Al's Pizza received three

counterfeit bills on December 5, 2016, and December 6, 2016 and that the person who spent these bills was unknown. Doc. 154 at 192. Macke also testified about the trash pull in which a number of counterfeit bills were found in Barga's trash. *Id*. at 155-159. Detective Robert Jameson ("Jameson") testified that a number of counterfeit bills were received at area businesses in August of 2016 and that he began tracking the serial numbers on these bills. *Id*. at 196-197. Jameson said that the serial numbers on the counterfeit bills received at Al's Pizza on December 5, 2016, and December 6, 2016, matched the serial numbers on the counterfeit bills discovered in Barga's trash. *Id*. at 202-203. Agent Jennifer Tron ("Tron"), who works for the United States Secret Service, identified the characteristics that indicated the bills found in Barga's trash and the bills received at Al's Pizza were counterfeit. Doc. 155 at 172-175.

**{¶12}** Engle then testified that Barga made counterfeit bills with a purported face value totaling $1,000.00 and that they drove to Dayton to buy drugs with these bills in August of 2016. Doc. 155 at 12. Engle testified that Barga told her that he was able to counterfeit money and that she observed him printing counterfeit bills. *Id*. at 16-17. She explained, at trial, the process by which Barga would copy and print counterfeit bills. *Id*. She also explained her role in the counterfeiting process. *Id*. at 11-12. She went to Walmart to exchange a printer for the purpose of obtaining a new printer with a full ink cartridge. *Id*. at 11. In exchange for this, Barga gave her a portion of the counterfeit bills. *Id*. at 12.

**{¶13}** Harris then testified that he was found by the police to have counterfeit bills with a purported face value totaling $460.00 at a Wendy's on December 8, 2016. *Id*. at 52. He testified that these counterfeit bills came from Barga. *Id*. at 42. He also stated that his role in the counterfeiting operation was exchanging a printer at Walmart and obtaining a new printer that had a full ink cartridge. *Id*. at 46. He said that Barga would have someone in the counterfeiting operation exchange a printer at Walmart when he ran out of ink. *Id*. Barga and Harris would use the counterfeit bills to buy drugs in Dayton. *Id*.

**{¶14}** Kevin Smith ("Smith"), Barga's cousin, testified that he allowed Barga to counterfeit money in his (Smith's) garage and that he observed Barga printing counterfeit bills in his garage. *Id*. at 80. Smith also stated that Barga had him return a printer to Walmart because Barga could only exchange a printer at Walmart a few times before he would get caught. *Id*. at 81. Smith testified that he got counterfeit bills in exchange for returning the printer to Walmart and that he destroyed the printer that was in his garage after Barga warned him that the police were investigating their counterfeiting operation. *Id*. at 84. The State also introduced a Walmart security video that showed Barga returning a printer on December 8, 2016. Doc. 154 at 218. From this evidence, a jury could have reasonably concluded that Barga was guilty of the crime of forgery. The record shows that the State presented some evidence to establish each of the essential elements of these charged crimes. We turn now to the fourth count of forgery.

Legal Analysis for the Fourth Count of Forgery

**{¶15}** In this case, the search of Barga's home resulted in the discovery of a counterfeit, five-dollar bill. Doc. 154 at 165. On appeal, Barga argues that this bill was torn and, therefore, was not held with the purpose to commit a fraud.[1] However, we note that the fourth count of forgery is not based upon possession of the torn counterfeit five-dollar bill but on the materials discovered in the trash pull on December 15, 2016. Doc. 156 at 12. Doc. 5. At trial, Detective Kevin Macke testified that the police discovered thirty counterfeit, twenty dollar bills and fourteen counterfeit, ten dollar bills during the trash pull at Barga's residence. Doc. 154 at 172. These counterfeit bills had serial numbers on them that matched the serial numbers on counterfeit bills that had been received at Al's Pizza several days earlier. *Id*. at 164. These bills were found alongside pieces of Barga's mail and a discarded personal check written by his wife. *Id*. at 158. The police also discovered a printer manual in the trash pull. *Id*. at 156-159.

**{¶16}** The State also introduced several text messages that were sent from Barga's phone on December 15, 2016. Ex. 5. Barga received a text that read: "And mike want us to make him some fake bills he said he'd buy em." Ex. 5. In response, Barga texted: "S*** we can do that." Ex. 5. Doc. 154 at 206-207. Considered with the substantial evidence presented by the State that Barga was involved in a

---

[1] Barga admitted at trial that he printed this counterfeit five-dollar bill but claimed that he printed it in 2011.

counterfeiting operation, we find that the State presented some evidence to establish each of the essential elements of the fourth count of forgery in this case.

{¶17} After viewing all of the evidence in a light most favorable to the prosecution, we find that the evidence presented by the State provided a legally adequate basis for the jury to conclude that Barga was guilty of the second, third, and fourth counts charged against him. For this reason, Barga's first assignment of error is overruled.

*Second Assignment of Error*

{¶18} In his manifest weight challenge, Barga argues that his convictions for the second and third counts of forgery charged against him were based upon the testimony of two witnesses—Engle and Harris—who were not credible and that the manifest weight of the evidence, therefore, supports acquittal.

Legal Standard

{¶19} "When 'deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion.'" *Brown, supra*, at ¶ 8, quoting *State v. Blanton*, 121 Ohio App.3d 162, 169, 699 N.E.2d 136 (3d Dist.1997). "Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict." *Plott*, *supra*, at ¶ 73. "In a manifest weight analysis,

'the appellate court sits as a 'thirteenth juror' * * *." *Davis*, *supra*, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶20}** On appeal, courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Brentlinger*, *supra*, at ¶ 36, quoting *Thompkins* at 387. "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *Sullivan*, *supra*, at ¶ 38, quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *Little*, *supra*, at ¶ 27, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

## Legal Analysis

**{¶21}** In this analysis, we reincorporate the evidence that was presented in the sufficiency analysis above and now consider factors that impact the weight of the evidence presented at trial. On appeal, Barga focuses his manifest weight challenge on the credibility of Engle and Harris. On cross examination, Engle admitted that she was a drug addict; that she had been convicted of theft and receiving stolen property; and that she was testifying pursuant to a plea agreement.

Doc. 155 at 25-26, 30-31. She also admitted that she did "not care for" Barga as he arranged for her to be caught in a sting operation. *Id*. at 20. At trial, Harris admitted that he was a drug addict; that he had a conviction for trafficking in drugs; that he had a criminal case pending against him; and that he was testifying against Barga pursuant to a plea agreement. *Id*. at 39, 67, 69. Harris also testified that he had given inconsistent statements to the police during the course of this investigation. *Id*. at 61, 64.

{¶22} Further, the Defense called several witnesses who contradicted the accounts provided by the State's witnesses and impeached the credibility of the State's witnesses. Jessica Work ("Work"), a friend of Harris, testified that Harris was not an honest person. Doc. 159 at 25. Work also described an incident in which she went with Harris to buy drugs in Dayton with counterfeit money. *Id*. at 35. Michael Barga ("Michael"), Barga's brother, also testified that Smith was jealous of Barga and thought that Barga might be "snitching" on him. Doc. 155 at 209. Michael asserted that the counterfeit bills in Barga's trash were placed there by the people who Barga allowed to stay in his garage. *Id*. at 221.

{¶23} Marcella Hauff ("Hauff") testified that she had stayed in the Barga's garage and that she had not seen Barga print money during that time. Doc. 159 at 51. She further testified that Harris moved into Barga's garage at the time she moved out of Barga's garage. *Id*. at 59. She testified that, after she had moved out, she had returned on one occasion to the Barga's house to retrieve her coat and a

wooden chest. When she got her coat, she found it contained counterfeit bills that had a purported face value totaling $30.00. *Id*. at 54. She also discovered several items in her wooden chest that did not belong to her, including a bag of counterfeit bills that had not been cut out of the paper on which they were printed. *Id*. Hauff testified that she threw the counterfeit bills and these other items into the garbage. *Id*. However, Hauff admitted that she did not know who put these items into her coat and into her wooden chest. *Id*. at 56. Hauff admitted that she had convictions for possessing drugs and for possessing criminal tools. *Id*. On cross examination, Hauff also admitted that she was not an honest person. *Id*. at 59.

{¶24} At trial, Barga testified that he had been involved in a counterfeiting operation in 2011 but had not been involved in counterfeiting within the last year. *Id*. at 88-89, 149, 156. The State introduced evidence that showed he had a conviction for forgery in 1994; a conviction for uttering a fraudulent check in 2012; a conviction for theft in 2011; and a conviction for theft in 2015. *Id*. at 219-220. However, during his testimony, he denied giving counterfeit bills to Engle and claimed that he saw Smith printing counterfeit money in his (Smith's) garage. *Id*. at 113, 118. He also testified that he gave Harris a place to stay in his garage for a time. *Id*. at 137. Barga claimed that he gave Harris and one of Harris's friends access to his cell phone, which is how the text messages about counterfeit money got onto his cell phone. *Id*. at 143. Barga insisted that he did not instruct Harris or Engle as to how they could counterfeit bills. *Id*. at 149. At trial, Barga also admitted

that he did return a printer at Walmart but claimed that he used the proceeds from this return to get a Christmas tree. Doc. 159 at 142.

**{¶25}** Barga's statements denying involvement in this counterfeiting operation were also introduced at trial. During a police interview, Barga claimed that he was not involved in printing counterfeit bills. Doc. 154 at 166. However, Barga did state that he was aware of three people who were printing counterfeit bills and that he knew the three locations where they were printing these forged notes. *Id.* at 167. Barga also told the police that he heard from a friend that the people in his garage had been counterfeiting bills, which is what motivated him to return the printer in his garage to Walmart on December 8, 2016. Doc. 154 at 157.

**{¶26}** At trial, the Defense presented evidence that contradicted the evidence presented by the State and demonstrated that several of the State's witnesses had given prior statements to the police that were inconsistent with their statements at trial. On review of the record, we find that the jury could have reasonably concluded from the evidence presented at trial that Barga was guilty of the charges against him. Further, we do not find any evidence in the record that the jury lost its way and returned a verdict against the manifest weight of the evidence. For these reasons, Barga's second assignment of error is overruled.

*Conclusion*

**{¶27}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Shelby County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/hls**