OPINION
{¶ 1} Defendant-appellant, Jimmie Turner (hereinafter "Turner"), appeals the judgment of the Court of Common Pleas of Marion County, finding him guilty of Escape, in violation of R.C.2921.34, and Intimidation, in violation of R.C. 2921.03(A).
 {¶ 2} In June 2003, Turner was housed at the Multi-County Correctional Center in Marion, Ohio, serving a sentence for a conviction for Vandalism, a violation of R.C. 2909.05. On June 30, corrections officers observed Turner with a sheet, in his upper-tier cell, threatening to hang himself. After the threat was made, corrections officers removed Turner from his cell and took him to speak with the resident psychiatrist. Following his visit to the psychiatrist, Turner was placed in a holding cell in the booking area so that corrections officers could monitor his behavior.
 {¶ 3} The following day, July 1, 2003, at approximately 11:30 a.m., officers Daniel Lehman and Mike King delivered lunch to Turner. When the officers unlocked the cell door, Turner attempted to force his way out of the cell. In response, the officers pushed the door closed, pinning Turner's left arm, left leg and head between the door and the doorjamb. After a struggle, the officers forced Turner back inside and shut the door to the holding cell.
 {¶ 4} Following this incident, Turner complained that his knee had been injured when it had been caught in the door. Based on this complaint, corrections officers transported Turner to the medical area to be examined for injuries. Turner was treated without incident. After his examination, officers transported Turner to a medical cell. On the way to the medical cell, however, Turner became uncooperative, telling the officers he was not going to be "locked down" and that he was going to kill someone or hurt himself. Turner then began struggling with the corrections officers. The officers proceeded to handcuff Turner and placed him in the medical cell.
 {¶ 5} Turner continued to be agitated after he was placed in the medical cell. Officers attempted to calm him down so that they could cut off his uniform and place him in a suicide gown, but Turner continued to scream at the officers, claiming that all he wanted was air when he tried to get out of the holding cell. Corrections Officer Stephanie Young was directed to insert mace spray under the door of the medical cell to subdue Turner. After Young sprayed mace into the cell, the officers opened the door. A struggle ensued between Turner and the officers, resulting in Turner biting Corrections Officer Mike King on the hand. Following this altercation, Turner was placed in a suicide gown and the officers dispersed.
 {¶ 6} As a result of these incidents, Turner was charged with Assault, in violation of R.C. 2903.13, a fifth degree felony, for the injury to Corrections Officer Mike King, Escape, in violation of R.C. 2921.34, a third degree felony and Intimidation, in violation of R.C. 2921.03, a third degree felony. Turner pleaded not guilty to the charges and a jury trial commenced on February 5, 2004. Following the presentation of evidence, the jury returned verdicts of not guilty on the charge of assault and guilty on the charges of escape and intimidation.
 {¶ 7} It is from this conviction that Turner appeals, setting forth nine assignments of error for our review. For clarity of analysis, some assignments of error have been combined.
 ASSIGNMENT OF ERROR NO. I The record contains insufficient evidence to supportDefendantappellant's conviction for escape.
 ASSIGNMENT OF ERROR NO. III Defendant-appellant's conviction for escape is contrary to themanifest weight of evidence.
 {¶ 8} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1981), 61 Ohio St.3d 259. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 9} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. Statev. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the demeanor of the witnesses and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 10} The crime of escape is defined by R.C. 2921.34, which states in pertinent part:
No person, knowing the person is under detention or beingreckless in that regard, shall purposely break or attempt tobreak the detention, or purposely fail to return to detention,either following temporary leave granted for a specific purposeor limited period, or at the time required when serving asentence in intermittent confinement.
 {¶ 11} In these two assignments of error, Turner argues that the evidence presented to the jury could not have convinced a rational trier of fact that he possessed the requisite mental state to commit the crime of escape. Turner indicates that the statute requires a person act "purposely" to break or attempt to break detention and that he did not act accordingly. Turner asserts that he suffers from claustrophobia and that although he intended to get out of the holding cell, his actions were inconsistent with an intent to terminate legal custody. In support, he contends that he "tried to step through the door in the middle of the day with three officers present." He also asserts that even if he had been successful in getting out of the holding cell, he would have gotten out into another secure area. Therefore, Turner contends that the state failed to prove that his purpose for getting out of his cell was to terminate legal custody.
 {¶ 12} At trial, Corrections Officers Mike King, Daniel Lehman and Stephanie Young testified about the incident at the holding cell. King and Lehman were two of the officers who brought lunch to Turner prior to his attempt to get out of his cell. Young was an eyewitness to the events. King stated that he approached the holding cell and asked Turner to step away from the door so that the officers could open it and Turner cooperated. King then started to open the door to hand Turner his lunch. Before King could step back, he stated, Turner tried to get out the door. Likewise, Lehman testified that as the door was opened Turner "started charging the door and he wanted to get out." Young testified that the officers had opened the door to give Turner his lunch when "he tried to come out of the door."
 {¶ 13} Additionally, a videotape of Turner's actions in the holding cell was introduced as evidence and shown to the jury. On the tape, Turner is seen through a floor-to-ceiling window by the cell door standing calmly as the officers approach the holding cell. From the videotape, Turner did not appear to be in any distress. However, when officers began to open the door, Turner lunged toward it, forcing his arm and leg through the opening.
 {¶ 14} After a review of this evidence, we do not find, as a matter of law, Turner's conviction for escape was based upon insufficient evidence, as we find that the evidence introduced was sufficient to convince a rational trier of fact of Turner's guilt beyond a reasonable doubt. Further, we do not accept Turner's argument that he could not have committed the crime of escape because he did not attempt to leave the correctional facility, only his cell. In our determination, "detention" does not denote a specific place, but rather a state of control. If we were to carry Turner's argument to its logical end, it would seem that an inmate would be free to break out of his cell at will and wander throughout a correctional facility without breaking detention, so long as he did not pass through the last door to the outside world. In our view, breaking "detention" is not limited to breaking the last possible restraint. Under the circumstances of this case, we find that Turner was under "detention" while he was in the holding cell and his intent to get out of the holding cell constituted a desire to break "detention," sufficient for the jury to find him guilty of Escape, in violation of R.C. 2921.34(A).
 {¶ 15} Moreover, we do not find that Turner's conviction for escape was against the manifest weight of the evidence. The jury, in the case sub judice, was presented the best possible evidence, as they were able to view on videotape the actions of Turner upon which the charge of escape was based. The evidence established that Turner made an attempt to break his detention by forcing his way past the guards at the door of the holding cell. An attempt to break detention is all that is required to violate R.C.2921.34(A). Turner's argument that he would have "escaped" into a secure area is of no consequence. Impossibility is not a defense to an attempted crime. State v. Brown (March 29, 1996), 6th Dist. No. OT-95-040. Therefore, we cannot find that the jury clearly lost its way in finding Turner guilty.
 {¶ 16} Turner's first and third assignments of error are overruled.
 ASSIGNMENT OF ERROR NO. II The record contains insufficient evidence to supportDefendantappellant's conviction for intimidation.
 ASSIGNMENT OF ERROR NO. IV Defendant-appellant's conviction for intimidation is contraryto the manifest weight of the evidence.
 {¶ 17} The charge of Intimidation, in violation of R.C.2921.03 arose from the statements Turner made to corrections officers during the altercation he had with them en route to the medical cell and while they were trying to dress him in the suicide gown. In his second and fourth assignments of error, Turner asserts that no evidence was presented that he threatened any particular individuals and that the officers considered his statements to be general. Further, Turner contends that he was incapable of carrying out any alleged threats.
 {¶ 18} The crime of Intimidation is set forth in R.C.2921.03(A) and provides in part:
No person, knowingly and by force or by unlawful threat ofharm to any person or property, shall attempt to influence,intimidate, or hinder a public servant * * * in the discharge ofthe duties of the public servant * * *.
 {¶ 19} At trial, Corrections Officer Lehman testified that Turner was yelling at the officers that he was going to kill somebody and that he was not going to be locked back down. Lehman stated that he believed the statements were directed at all of the officers. Lehman testified that he took the threats seriously, based on his previous experience with Turner and that the officers had to take extra precautions in light of the threats.
 {¶ 20} Corrections Officer Ray Myers testified that he arrived at the medical cell to aid the officers in putting Turner in a suicide gown. Myers stated that when he got to the medical cell Turner was handcuffed, but was banging the handcuffs against the window saying that he would kill anyone who came near him.
 {¶ 21} These officers indicated, therefore, that Turner repeatedly threatened to kill them and that these threats occurred while the officers were discharging their duties as corrections officers in controlling Turner and placing him in a suicide gown. This testimony, if believed, would serve as sufficient evidence to support a conviction for the crime of Intimidation as provided in R.C. 2921.03. Accordingly, we do not find that there is insufficient evidence to support Turner's conviction for intimidation.
 {¶ 22} In addition, after examining the record and weighing the evidence, we can not conclude that Turner's conviction for intimidation is against the manifest weight of the evidence. The evidence established that Turner made threats to the officers while they were attempting to perform their job duties. The jury determined that this testimony by the corrections officers was credible and we can not find that it lost its way in doing so.
 {¶ 23} Turner's second and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR NO. V The trial court erred to the prejudice of Defendant-appellantby excluding the testimony of Dr. Neidemeyer.
 {¶ 24} As part of his defense, Turner intended to call Dr. J. Neidemeyer to testify that Turner suffers from claustrophobia. Prior to trial, however, the state filed a motion in limine to preclude the testimony of Dr. Neidemeyer on that basis that evidence of Turner's mental state was inadmissible, because he did not plead Not Guilty by Reason of Insanity. At a hearing on the motion, Turner argued that Dr. Neidemeyer's testimony would not establish that Turner had an incapacity to form the intent to commit the crime of Escape, but would be relevant to Turner's state of mind at the time of the alleged escape. The trial court ruled that Dr. Neidemeyer's testimony was inadmissible.
 {¶ 25} Turner alleges that it was error for the court to exclude the testimony of Dr. Neidemeyer as it was relevant to explain why Turner attempted to get out of the holding cell. Turner asserts that this testimony was crucial for disproving an element of the crime of Escape, that he did not have an intent to "break detention," but rather wanted out of his cell "for air."
 {¶ 26} A trial court enjoys broad discretion in the admission and exclusion of evidence. State v. Hymore (1967),9 Ohio St.2d 122, 128. Therefore, our review is limited to determining whether the trial court abused its discretion. Rigby v. Lake Cty.
(1991), 58 Ohio St.3d 269, 271. The term "abuse of discretion" connotes a judgment that is rendered with an unreasonable, arbitrary, or unconscionable attitude. Cedar Bay Constr., Inc.v. Fremont (1990), 50 Ohio St.3d 19, 22.
 {¶ 27} The Ohio Supreme Court has established that:
 * * * except in the mitigation phase, `a defendant may notoffer expert psychiatric testimony, unrelated to the insanitydefense, to show that due to mental illness, intoxication, or anyother reason, he lacked the mental capacity to form the specificmental state required for a particular crime or degree ofcrime.'
 {¶ 28} State v. Mitts (1998), 81 Ohio St.3d 223, 227, citing State v. Wilcox (1982), 70 Ohio St.2d 182, 194. Therefore, despite its alleged relevancy to an element of the crime charged, Turner was not entitled to offer Dr. Neidemeyer's testimony that he lacked the intent to commit Escape, in violation of R.C. 2921.34.
 {¶ 29} Further, we note that Turner's counsel argued to the jury that Turner suffered from claustrophobia and that Turner lacked the requisite intent to commit escape. For the foregoing reasons, we do not find that the trial court abused its discretion in excluding the testimony of Dr. Neidemeyer.
 {¶ 30} Turner's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. VI The trial court erred to the prejudice of Defendant-appellantby permitting, over objection, the testimony of Lt. Romineregarding incident reports.
 {¶ 31} At trial, over objection, the trial court allowed Lieutenant Peg Romine to read into evidence portions of incident reports filed by corrections officers regarding Turner's threats to the officers during the incident in the medical cell. Turner alleges that the trial court erred in admitting this evidence, as the reports were hearsay, no proper foundation was laid for them to be admissible as business records and they were not subject to cross-examination.
 {¶ 32} A review of the record, however, reveals that the corrections officers whose reports were read into evidence were all subpoenaed as witnesses. Moreover, a review of the transcript indicates that the incident reports were, in fact, presented to Lt. Romine who stated that she recognized them as being incident reports and that they were a record kept in the ordinary course of business, an exception to hearsay. See Evid.R. 803(6). Further, defense counsel repeatedly questioned the corrections officers about the incident reports they prepared and used the contents of the reports for impeachment purposes.
 {¶ 33} For these reasons, we cannot conclude that the trial court abused its discretion in allowing Lt. Romine's testimony regarding the incident reports.
 {¶ 34} Turner's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. VII The jury instruction given by the court regarding escape wasincomplete, misleading and prejudicial to Defendant-appellant.
 {¶ 35} Jury instructions should outline the issues, state the applicable principles of law, and clarify the jury's role in the case. Bahm v. Pittsburgh Lake Erie Rd. Co. (1966),6 Ohio St.2d 192. A jury instruction is proper when it adequately informs the jury of the law. Linden v. Bates Truck Lines, Inc.
(1982), 4 Ohio App.3d 178. The trial court has the responsibility to give all jury instructions that are relevant and necessary for the jury to weigh the evidence and make findings of fact. SeeState v. Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus; State v. Lessin (1993), 67 Ohio St.3d 487. The court is not required, however, to give requested instructions verbatim, so long as the instructions actually given contain a correct, pertinent statement of the law and are appropriate to the facts of the case. Id.
 {¶ 36} In this assignment of error, Turner claims that the jury instruction was incomplete as to the meaning of the word "detention." Turner concedes that the court properly instructed the jury on the definition of "detention" as found in R.C.2921.01, which provides that "`detention' means arrest, confinement in any vehicle subsequent to an arrest, or confinement in any public or private facility for custody of persons charged with or convicted of a crime in this state." Turner asserts, however, that the jury should have also been instructed with the language of State v. Shook (1975),45 Ohio App.2d 32, 34, which provides that detention is "an abstract term which signifies, not a place or means of confinement, but a status."
 {¶ 37} Turner, however, failed to object to the jury instruction at trial. Consequently, the jury instruction is reviewed for plain error only. See Crim.R. 52(B). Under a plain error analysis, a reviewing court must find (1) that there was an error, (2) that the error was an obvious defect in the trial proceedings, and (3) that the error affected a substantial right of the appellant, which has been interpreted to mean that the trial court's failure to give the requested instruction affected the outcome of the trial. State v. Barnes (2002),94 Ohio St.3d 21. We recognize plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107.
 {¶ 38} After review, we fail to find that there was an error, as the facts of Turner's case are distinguishable from the facts of State v. Shook. In Shook, an inmate walked out of a county jail through an open door without using force of any kind. See45 Ohio App.2d 32 at 34. The trial court determined that force was not an essential element of escape and, therefore, the court's interpretation of "detention" as "an abstract term which signifies, not a place or means of confinement, but a status" was, therefore, appropriate for the facts of that case. Turner, however, attempted to get out of a locked holding cell by pushing himself past two corrections officers in his path. Considering these facts, we find that the trial court gave a correct, applicable statement of the law in instructing the jury on the meaning of "detention" as provided by R.C. 2921.01. Moreover, in light of all of the circumstances of the instant case, we do not believe that the result of the trial would have been different even if the court had instructed the jury as to the language inState v. Shook.
 {¶ 39} Turner's seventh assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. VIII Defendant-appellant received prejudicially ineffectiveassistance of counsel in violation of his Sixth andFourteenth Amendment rights, as well as his rights under Section 10, Article1, Ohio Constitution.
 {¶ 40} Turner alleges that his trial counsel was ineffective in failing to offer the testimony of Dr. Neidemeyer after the trial court's ruling on the motion in limine to exclude the doctor's testimony. Turner also claims that trial counsel failed in an essential duty by not obtaining an independent psychological evaluation of him to present evidence of his claustrophobia. Finally, Turner asserts that trial counsel's failure to object to the jury instruction constituted a deficient performance.
 {¶ 41} To establish a claim of ineffective assistance of counsel, appellant must show two components: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense. State v. Kole (2001), 92 Ohio St.3d 303, 306. To warrant reversal, the appellant must show that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. Stricklandv. Washington (1984), 466 U.S. 668.
 {¶ 42} As to Turner's assertions regarding the testimony of Dr. Neidemeyer and the failure to obtain an independent psychological examination, we found herein that "a defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that * * * he lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime." State v. Mitts (1998), 81 Ohio St.3d 223,227. Therefore, we can not hold that Turner's trial counsel was unreasonable or deficient in this regard.
 {¶ 43} Nor can we find that trial counsel acted contrary to his essential duties in failing to object to the jury instructions as given. Further, Turner has not demonstrated that the outcome of the trial would have been different but for counsel's failure to object to the jury instructions.
 {¶ 44} Turner's eighth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. IX The combination of the aforementioned errors are sufficient tocall into question the validity of the verdict, preventing theappellant from obtaining the fair trial guaranteed by the Fifthand Sixth Amendments to the U.S. Constitution as made applicableto the states by the Fourteenth Amendment, and Article 1,Sections 10 and 16 of the Ohio Constitution, requiring reversalof the appellant's conviction and a new trial.
 {¶ 45} Finding no merit to the eight assignments of error presented herein, we overrule Turner's ninth assignment of error, determining that no cumulative error exists.
 {¶ 46} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Bryant and Rogers, J.J., concur.