[Cite as *State v. Slone*, 2023-Ohio-1110.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 15-22-04

v.

KARIA L. SLONE,

    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Van Wert Municipal Court
Trial Court No. CRB 2100502

Judgment Affirmed

Date of Decision: April 3, 2023

APPEARANCES:

    *Terry L. Simson* for Appellant

    *John E. Hatcher* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Karia L. Slone ("Slone") appeals the judgment of the Van Wert Municipal Court, arguing that her conviction for domestic violence is against the manifest weight of the evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Deputy James Hyitt ("Deputy Hyitt") is employed at the Van Wert County Sheriff's Office and was working on road patrol on November 22, 2021. Tr. 4. At roughly 9:57 P.M., he was dispatched to respond to a residential disturbance that had been reported by Slone. Tr. 5. When he arrived at the house, Deputy Hyitt spoke with Slone outside while another officer, Deputy Jones, spoke with the other person involved in the altercation, Christopher Mann ("Mann"). Tr. 6. In addition to Slone and Mann, two children were present at the residence. Tr. 6.

{¶3} Deputy Hyitt testified that Slone indicated that "the relationship was not working"; that she wanted "him to leave or get out"; that this upset Mann; and that Mann shoved her, causing her to trip over her son and fall backwards. Tr. 7, 13. However, Mann indicated that Slone struck him in the face; that she then struck him on the back of the head; and that she then grabbed his head while digging her nails into his neck. Tr. 28-29, 31-32. Mann indicated that, in response, he pushed Slone off of him. Tr. 29.

**{¶4}** Deputy Hyitt observed some redness on Slone's "upper chest, lower neck area * * *." Tr. 7. When Deputy Hyitt saw Mann, he observed "scratch marks" that were "on the back of his neck." Tr. 9. After their respective conversations with Slone and Mann, Deputy Hyitt and Deputy Jones spoke with each other. Tr. 8-9. They determined that Slone had been the primary aggressor in this situation based on presence of the scratch marks on the back of Mann's neck. Tr. 10. As a result, the deputies arrested Slone. Tr. 8, 15.

**{¶5}** On November 23, 2021, a complaint was filed that charged Slone with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. Doc. 1. At a bench trial on August 10, 2022, Deputy Hyitt, Mann, and Slone testified. Tr. 4, 16, 53. During her testimony, Slone testified that, during the altercation, she grabbed the front of his sweatshirt after he had pushed her. Tr. 62-63. She affirmed "that this was the only time [she] * * * touched" Mann during the incident. Tr. 63. After considering the testimony of the witnesses, the trial court found Slone guilty of the charge of domestic violence. Tr. 69. The trial court then sentenced Slone and issued its judgment entry on August 10, 2022. Tr. 73.

*Assignment of Error*

**{¶6}** Slone filed her notice of appeal on August 29, 2022. Doc. 60. On appeal, she raises the following assignment of error:

> **The trial court found the defendant guilty against the manifest weight of the evidence.**

While the text of the assignment of error only mentions manifest weight, the body of Slone's argument also incorporates references to the sufficiency of the evidence. For this reason, we will set forth both legal standards below.

*Legal Standard*

{¶7} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, 546 (1997). "A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial." *In re Swift*, 8th Dist. Cuyahoga No. 79610, 2002-Ohio-1276, ¶ 19. This "analysis addresses the question of whether adequate evidence was produced for the case to be considered by the trier of fact and, thus, whether the evidence was 'legally sufficient to support the verdict * * *.'" *State v. Barga*, 3d Dist. Shelby No. 17-17-14, 2018-Ohio-2804, ¶ 8, quoting *State v. Worthington*, 3d Dist. Hardin No. 6-15-04, 2016-Ohio-530, ¶ 12.

{¶8} "An appellate court is not to examine whether the evidence presented should be believed but should rather 'examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Wilson*, 2022-Ohio-504, 185 N.E.3d 176, ¶ 57 (3d Dist.), quoting *State v. Johnston*, 3d Dist. Logan No. 8-13-10, 2014-Ohio-353, ¶ 10, quoting *State v. Jenks*, 61 Ohio St.3d 259, 274, 574

N.E.2d 492 (1991), *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668 (1997). On appeal, the applicable standard

> **is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.**

*State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 27, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 62 (3d Dist.).

{¶9} "In a manifest weight analysis, 'an appellate court determines whether the state has appropriately carried its burden of persuasion.'" *State v. Richey*, 2021-Ohio-1461, 170 N.E.3d 933, ¶ 29 (3d Dist.), quoting *State v. Blanton*, 121 Ohio App.3d 162, 169, 699 N.E.2d 136 (3d Dist. 1997). In contrast to a "review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict." *Plott, supra*, at ¶ 73. Thus, "the appellate court sits as a 'thirteenth juror' * * *." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *Thompkins, supra*, at 387. On appeal, courts

> **must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' *State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387 * * *.**

*State v. Schatzinger*, 3d Dist. Wyandot No. 16-20-04, 2021-Ohio-167, ¶ 52.

**{¶10}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

**{¶11}** To establish a conviction for domestic violence in violation of R.C. 2919.25(A) as a misdemeanor of the first degree, the State must prove that the defendant "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." R.C. 2919.25(A). *See* Doc. 1, 57. Further, R.C. 2919.25(F)(1) defines "family or household member" and reads as follows:

> **(1) 'Family or household member' means any of the following:**
>
> **(a) Any of the following who is residing or has resided with the offender:**
>
> **(i) A spouse, a person living as a spouse, or a former spouse of the offender;**
>
> **(ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;**
>
> **(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by**

> **consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.**
>
> **(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.**

R.C. 2919.25(F)(1). In turn, R.C. 2919.25(F)(2) defines "person living as a spouse" and reads as follows:

> **a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.**

R.C. 2919.25(F)(2).

*Legal Analysis*

**{¶12}** In this case, Mann and Slone testified that they had been living together in a house in Ohio City at the time of the incident along with his son and her son. Tr. 19, 20. Mann testified that they had been in a relationship for "6 or 8 months" by that point. Tr. 19-20. He stated that, when he returned to the house from work, he began working on project in the residence with Rodney Perry ("Perry"), who had come to help with the plumbing. Tr. 22. Mann testified that, since he was working on the renovation project, he did not interact much with Slone until Perry had left the house at around 8:00 P.M. Tr. 22.

**{¶13}** Mann testified that the altercation began when Slone invited him to celebrate thanksgiving with her family. Tr. 26. He did not respond to the invitation because he intended to be with his family for the holiday. Tr. 26. As a result, Mann

-7-

and Slone began to have an argument. Tr. 27. Mann testified that Slone then slapped "the side of [his] * * * face" and then hit him harder on "the back of [his] * * * head." Tr. 28. He stated that he stood up to leave when Slone "dug" her nails "into [his] * * * neck and head * * *." Tr. 28. Mann testified that she was "grabbing" him and that his "whole head was in her hands * * *." Tr. 29. He testified that, in response, he pushed her away. Tr. 29. Mann also stated that he and Slone were in separate areas when they were talking to the police but that, after their conversations with the officers, Slone returned to the room he was in and screamed at him. Tr. 33.

{¶14} Slone testified that, while she and Mann were arguing, "he shoved [her] * * * very hard." Tr. 57. She stated that, "instead of completely falling, I'm almost 200 pounds, onto my 2 year old son, who was right behind me, I grabbed his [Mann's] sweatshirt so I completely didn't [f]all on top of my son." Tr. 58. On cross-examination, the following exchange occurred:

> **[Prosecutor]: And you've heard testimony regarding injuries that were sustained by Mr. Mann, you're denying that you grabbed him by the back of the head?**
>
> **[Slone]: No.**
>
> **[Prosecutor]: And left nail marks in his neck?**
>
> **[Slone]: I grabbed his sweatshirt so I wouldn't fall on my son. I didn't touch him.**
>
> **[Prosecutor]: So, you don't know how those injuries got there?**

**[Slone]:I have no idea.**

Tr. 60. On redirect, Slone indicated that, other than grabbing Mann's sweatshirt, she did not touch Mann. Tr. 63.

{¶15} Slone also indicated that she went upstairs with her son after the altercation and that the police had a conversation with her in that location. Tr. 61. She stated that she "did not want to be downstairs and be around him [Mann]" and that she only came back downstairs "when the cops brought me back down." Tr. 60, 58. On cross-examination, Slone was non-responsive to the prosecutor's further inquiry into whether she remained upstairs or went into other parts of the house and whether she had any further contact with Mann that evening. Tr. 61-62.

{¶16} The State then called Deputy Hyitt as a rebuttal witness. Tr. 64. He affirmed that, after Slone came downstairs with him, she "started yelling and moving from room to room[.]" Tr. 66. He further testified that Slone went to Mann and "was trying to get a reaction out of * * * [him]. I can't remember exactly what she was saying, but I felt as though she was trying to get him to react." Tr. 64. Deputy Hyitt had also testified previously that he had observed scratch marks on the back of Mann's neck. Tr. 9.

{¶17} Having examined the evidence in the record in a light most favorable to the prosecution, we conclude that the State presented some evidence to substantiate each of the essential elements of this offense of domestic violence. Further, while Mann and Slone gave conflicting accounts of what had transpired,

the trial court, as the finder of fact, was "free to believe all, some, or none of the testimony of each witness [that] appear[ed] before it." *State v. Houdeshell*, 3d Dist. Hancock No. 5-18-02, 2018-Ohio-5217, ¶ 39. "A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Williams*, 10th Dist. Franklin No. 08AP-719, 2009-Ohio-3237, ¶ 16. Having examined the evidence on the basis of its weight and credibility, we have found no indication that the finder of fact clearly lost its way and returned a verdict that was against the manifest weight of the evidence. For these reasons, Slone's sole assignment of error is overruled.

*Conclusion*

{¶18} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Van Wert Municipal Court is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and ZIMMERMAN, J., concur.**

**/hls**