[Cite as *State v. Johnson*, 2023-Ohio-2638.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

AMANDA JOHNSON,

    DEFENDANT-APPELLANT.

CASE NO. 3-22-51

O P I N I O N

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

AMANDA JOHNSON,

    DEFENDANT-APPELLANT.

CASE NO. 3-22-52

O P I N I O N

Appeals from Crawford County Common Pleas Court
Trial Court Nos. 21-CR-0180 and 21-CR-0309

**Judgments Affirmed**

**Date of Decision:  July 31, 2023**

**APPEARANCES:**

    *William T. Cramer* **for Appellant**

    *Daniel J. Stanley* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Amanda Johnson ("Johnson") appeals the judgments of the Crawford County Court of Common Pleas, alleging that the trial court gave incorrect jury instructions and that her convictions are against the manifest weight of the evidence. For the reasons set forth below, the judgments of the trial court are affirmed.

*Facts and Procedural History*

{¶2} On June 5, 2021 at roughly 3:17 A.M., Delvin Duffield ("Duffield") called 9-1-1 to report a domestic disturbance involving him and his girlfriend, Johnson. He stated that Johnson was using meth; that she was throwing things at him; and that he required assistance. Officer Deavon Wireman ("Officer Wireman") of the Bucyrus Police Department responded to this call, going to the house where Duffield and Johnson were then living together. At the scene, Duffield told Officer Wireman that Johnson had been using narcotics and that she had been calling him names. In this process, Duffield showed him a picture on his phone of Johnson using narcotics.

{¶3} Officer Wireman went upstairs with Duffield where he encountered Johnson. While Johnson denied using any narcotics, Officer Wireman observed a cut straw on a nightstand and a mirror with residue on it. However, this interaction was cut short when Officer Wireman received a dispatch indicating that another

officer was in need of immediate assistance in apprehending a person who was fleeing from police custody. Officer Wireman then asked if Duffield and Johnson were able to "be civil, separate in each other's rooms * * *, and [that] they agreed to do so." (Tr. 137). At this point, Officer Wireman left to assist the other police officer.

{¶4} Roughly in between 11:45 P.M. on June 5, 2021 and 12:00 A.M. on June 6, 2021, Duffield called 9-1-1, reporting that he was worried that Johnson was using meth. In response, Johnson's probation officer, Tony Stover ("Stover"), went with Officer Jason Pennington ("Officer Pennington") and two other police officers to the house where Duffield was then living. When they arrived, the police found Sarah Lewis ("Lewis") and Noah Watkins ("Watkins") sleeping on the ground in the garage. Lewis was Johnson's sister, and Watkins was Lewis's boyfriend.

{¶5} The police discovered a loaded syringe beside Lewis and a syringe in Watkins's pocket. Stover and Officer Pennington then met Duffield and Johnson's mother at the front porch of the residence. Duffield was standing at the door and told the police that Johnson was not currently at home but was at a friend's house. Duffield then turned and began rushing up the stairs towards the second story of the house.

{¶6} As Duffield was going up the stairs, Stover "heard a loud bang" that sounded like something fell over on the second floor of the house. (Tr. 89). Duffield did not respond to commands to return to the first floor. For this reason, Stover and

Officer Pennington followed him up the stairs where they encountered Johnson in her bedroom. She stated that she had directed Duffield to tell the police that she was not home because she did not want to go to jail.

{¶7} Stover then "observed several marijuana pipes * * * on one of the dressers" in Johnson's bedroom. (Tr. 90). Officer Pennington and Stover asked her if she had or used any illegal drugs. In response, Johnson stated that she did "marijuana and stuff." (Tr. 22). However, she also indicated several times that she only smoked marijuana and that "there were no other drugs." (Tr. 90).

{¶8} At this point, Stover noticed that a box fan was lying on its side next to the dresser in Johnson's bedroom. He thought that "someone might have been doing something with the dresser, and knocked the fan over." (Tr. 91). This could also explain the "loud bang" that he heard while Duffield was climbing the stairs. (Tr. 89). Stover went to this area of Johnson's bedroom and saw a purse stuck behind the dresser. As Stover retrieved this item from behind the dresser, he did not observe any cobwebs or dust on the purse.

{¶9} While examining the contents of the purse, Stover discovered a change purse that contained what appeared to be meth, several pills, and a baggie of marijuana. He also discovered "feminine hygiene products in the purse * * *." (Tr. 94). The purse also contained an Electronic Benefit Transfer Card, a debit card, and a credit card that had Johnson's name on them. While he found an identification card belonging to Duffield inside the purse, he did not find any other items that bore

the name of a person other than Duffield or Johnson. Officer Pennington also discovered a digital scale, plastic baggies, and a metal container in Johnson's bedroom.

{¶10} At this point, Johnson was arrested and taken to the local jail. Stover later testified that he believed that did not seek a drug test in this situation because he viewed this as a drug possession case. Within one day of being taken into police custody, Johnson appeared before the trial court and was released on a personal recognizance bond. The contents of the change purse were sent to the Ohio Bureau of Criminal Investigation ("BCI") for testing and found to be methamphetamines and clonazepam.

{¶11} On June 8, 2021, Johnson was indicted on one count of aggravated possession of drugs in violation of R.C. 2529.11(A), a felony of the fifth degree, and one count of illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. This indictment became the basis of Case No. 21-CR-0180. On September 14, 2021, Johnson was indicted on one count of possession of drugs in violation R.C. 2925.11(A), a felony of the fifth degree.[1] This indictment became the basis of Case No. 21-CR-0309.

{¶12} On November 10, 2022, the State filed a motion that requested Case No. 21-CR-0180 be joined with Case No. 21-CR-0309 for trial. The trial court

---

[1] The items that Stover discovered in the change purse on June 6, 2021 were later tested and found to be Methamphetamines and Clonazepam. The charge of possession in Case No. 21-CR-0180 arises from the Methamphetamines. The charge of possession in Case No. 21-CR-0309 arises from the Clonazepam.

subsequently granted this motion on November 14, 2022. A jury trial was held on these indictments on November 17-18, 2022. On November 18, 2022, the jurors returned verdicts of guilty on all three counts against Johnson. The trial court sentenced Johnson on November 22, 2022.

{¶13} Johnson filed her notices of appeal on December 15, 2022. On appeal, she raises the following two assignments of error:

### First Assignment of Error

**The trial court failed to properly instruct the jury on the issue of possession.**

### Second Assignment of Error

**The convictions for drug possession were not supported by the weight of the evidence.**

We will consider the second assignment of error before we consider the first assignment of error.

### Second Assignment of Error

{¶14} Johnson argues that her two convictions for drug possession are against the manifest weight of the evidence.

### Legal Standard

{¶15} The manifest weight of the evidence analysis examines whether the State has carried its burden of persuasion at trial. *State v. Wilson*, 2022-Ohio-504, 185 N.E.3d 176, ¶ 58 (3d Dist.). In this process, "an appellate court's function * * * is to determine whether the greater amount of credible evidence supports the

verdict." *State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 12, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.). Accordingly, an "appellate court sits as a 'thirteenth juror' * * *." *State v. Barga*, 3d Dist. Shelby No. 17-17-14, 2018-Ohio-2804, ¶ 19, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 388, 1997-Ohio-52, 678 N.E.2d 541, 547 (1997).

> Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Randle*, 2018-Ohio-207, 104 N.E.3d 202, ¶ 36 (3d Dist.), quoting *Plott* at ¶ 73, quoting *Thompkins* at 387.

{¶16} "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

{¶17} To prove the offense of possession of drugs in violation of R.C. 2925.11(A), the State must establish that the offender "[1] knowingly [2] obtain[ed],

possess[ed], or use[d] [3] a controlled substance or a controlled substance analog." R.C. 2925.11(A). "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 3d Dist. Seneca Nos. 13-12-26, 13-13-04, 2013-Ohio-4975, ¶ 25. "A person has 'actual possession' of an item if the item is within his immediate physical possession." *State v. McClain*, 2020-Ohio-1436, 153 N.E.3d 854, ¶ 45 (3d Dist.), quoting *State v. Williams*, 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, ¶ 23.

{¶18} "A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession." *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18. Constructive possession may be established by circumstantial evidence. *State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 19. "[T]he surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *Id*.

{¶19} Close proximity between a person and a controlled substance is, by itself, insufficient to establish constructive possession. *McClain, supra,* at ¶ 46. However, close proximity can be some evidence of constructive possession. *Id*. Thus, "presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive

possession." *State v. Lane*, 2022-Ohio-3775, 202 N.E.3d 45, ¶ 15 (3d Dist.), quoting *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 20.

Legal Analysis

**{¶20}** On appeal, Johnson argues that the conclusion that she was in possession of drugs was against the manifest weight of the evidence. For this reason, we will focus our analysis on the element of possession. In this case, the illegal drugs were found in close physical proximity to where Johnson was located in her bedroom. However, the State produced additional evidence beyond close physical proximity to establish the element of possession.

**{¶21}** In this case, the police went to the house where Johnson was living after receiving a call from her boyfriend that indicated she had been using meth. Officer Pennington testified that, on his arrival, Duffield stated that Johnson was not at the house and was elsewhere. When Duffield rushed upstairs, Officer Pennington followed and encountered Johnson at the top of the stairs. She informed him that she had directed Duffield to tell the police she was not there because she did not want to go to jail.

**{¶22}** Stover testified that, when Johnson was asked about the marijuana pipes, "she commented several times, there were no other drugs, and all they did was smoke marijuana." (Tr. 90). However, Officer Pennington testified that Johnson admitted that she had used illegal drugs, including "marijuana and other stuff." (Tr. 22). In the body camera recording that was admitted as Exhibit 9, she

can be heard saying, "I had weed. I smoked it. I have done meth in the past week, you know. And I have had Benzos in the past week." (Ex. 9).

**{¶23}** Further, Stover testified that, as Duffield was rushing upstairs, he heard a "loud bang." (Tr. 89). When Stover got upstairs, he observed a box fan lying on the ground next to a dresser in Johnson's bedroom. He thought that the box fan might have been knocked on its side while someone was shifting the dresser around and that the box fan falling over may have been what caused the "loud bang" that he had heard. (Tr. 89). This led Stover to look behind the dresser and to ultimately locate the purse that was found to contain the illegal drugs. Stover testified that the purse "was jammed in behind the dresser" but did not have any dust or cobwebs on it that would suggest that it had been there for a while. (Tr. 96). He also stated that nothing else was located on top of the purse behind the dresser.

**{¶24}** Stover testified that he examined the contents of the purse. In addition to the illegal drugs, Stover said that he discovered feminine hygiene products in the purse. He also found Johnson's name on an EBT card, a credit card, and a debit card that were in the purse. Stover testified that Johnson "admitted it was her bedroom dresser and ID" in the purse. (Tr. 103). Further, in searching Johnson's bedroom, Officer Pennington found a digital scale and plastic baggies. Tr. 23. He testified that these items are commonly possessed by people "trafficking in drugs, a digital scale to weigh out the drugs and the plastic bags are to package them." (Tr.

23). Stover indicated that Johnson was arrested that night because the contents of the purse led the police to believe that the purse belonged to her.

{¶25} The Defense emphasized the fact that an identification card that belonged to Duffield was found in the purse in addition to feminine hygiene products, Johnson's EBT card, Johnson's debit card, and Johnson's credit card. However, "[p]ossession of drugs, for purposes of R.C. 2925.11(A), includes both individual and joint possession." *State v. Sprouse*, 9th Dist. Summit Nos. 29406, 29407, 2020-Ohio-91, ¶ 13. "Joint possession exists when two or more persons together have the ability to control an object, exclusive of others." *State v. Figueroa*, 9th Dist. Summit No. 22208, 2005-Ohio-1132, quoting *State v. Alicea*, 8th Dist. Cuyahoga No. 78940, 2001 WL 1243944, *6 (Oct. 18, 2001). Officer Pennington testified that the purse did not contain any identification cards that belonged to a person other than Johnson or Duffield. Similarly, Stover testified that there was no indication the purse contained any items that belonged to anyone other than Johnson or Duffield.

{¶26} The Defense called Officer Wireman as a witness. Officer Wireman testified that he was at the house where Johnson lived less than twenty-four hours before she was arrested on June 6, 2021. He stated that he went to this location because Duffield had called 9-1-1 to report a domestic disturbance. Duffield told Officer Wireman that Johnson had been using narcotics. Officer Wireman testified that he observed a cut straw and a "makeup mirror with a white substance on it" on

the dresser before he had to leave the house to address another police emergency.[2] (Tr. 136). He explained that a narcotics user will oftentimes place the illegal drugs on the mirror and then "use[] the straw on the mirror to insufflate the narcotics." (Tr. 143-144).

{¶27} At trial, Johnson testified in her own defense. She stated that the house in which the drugs were located was her mother's and that a number of people had access to the premises, including her mother; her mother's boyfriend; Duffield; and her uncle. She also stated that, while Lewis and Watkins were not permitted to live in the house, Lewis was allowed to enter the house on occasion. Johnson stated that the purse was not hers; that she did not know who owned the purse; that she had never before seen that purse; that she did not know who placed the purse behind the dresser; and that the drugs inside the change purse were not hers.

{¶28} On cross-examination, Johnson admitted that the room in which the drugs were found was her bedroom. She also admitted that the purse was found behind the dresser in which she stored her possessions. However, Johnson stated that she did not know about the EBT card, the credit card, or the debit card that were found inside the purse. She explained that she could not tell what the police were

---

[2] Officer Wireman referred to the dresser as a "nightstand" in his testimony. (Tr. 136). In speaking of this piece of furniture, Stover described it as "a dresser, could have been a nightstand, but I thought it was a dresser." (Tr. 92). In this opinion, we use the word "dresser" because this is the term most used at trial to refer to this piece of bedroom furniture.

taking out of the purse while they were searching her room on the night of June 6, 2021.

{¶29} The prosecution also questioned Johnson about a call that she made from jail to Duffield the night before she testified at trial. In this call, Johnson told Duffield that she did not "want him to come to court because * * * [she] d[id]n't want him to tell on [her] * * *." (Tr. 174). Johnson also admitted that she told Duffield to tell the police that she was not at the house on the night of June 6, 2021. She affirmed that she directed Duffield to do so because she did not want to "get in trouble." (Tr. 177). She concluded her testimony by denying that she hid drugs behind the dresser when the police arrived at her house.

{¶30} In summary, the State produced evidence from which a jury could conclude that Johnson was in possession of illegal drugs on June 6, 2021 that went beyond merely establishing that she was in close physical proximity to the illegal drugs in her bedroom. While Johnson stated that the drugs and the purse were not hers, the jurors were free to believe or disbelieve her testimony. *State v. Slone*, 3d Dist. Van Wert No. 15-22-04, 2023-Ohio-1110, ¶ 17. Having examined the record, we cannot conclude that the evidence presented at trial weighs heavily against Johnson's convictions for possession of drugs. Johnson has not demonstrated that the jury lost its way and returned a verdict against the manifest weight of the evidence. Accordingly, her second assignment of error is overruled.

*First Assignment of Error*

**{¶31}** Johnson argues that the trial court provided an incorrect jury instruction regarding the definition of possession.

Legal Standard

**{¶32}** "A trial court's instructions to a jury must correctly, clearly, and completely state the law applicable to the case." *State v. Orians*, 179 Ohio App.3d 701, 2008-Ohio-6185, 903 N.E.2d 656, ¶ 10 (3d Dist.). Jury instructions are also to be "appropriate to the facts of the case." *State v. Turner*, 3d Dist. Marion No. 9-04-21, 2004-Ohio-6489, ¶ 35. When a jury instruction is challenged as being incorrect, an appellate court "must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *State v. Frye*, 2018-Ohio-894, 108 N.E.3d 564, ¶ 105 (3d Dist.), quoting *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990). "An appellate court reviewing jury instructions must examine the specific charge at issue in the context of the entire charge, and not in isolation." *Orians* at ¶ 10.

**{¶33}** The "failure to object to jury instructions, stating specifically the error and the grounds, waives all but plain error." *State v. Parker*, 7th Columbiana No. 04 CO 44, 2005-Ohio-6777, ¶ 18. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). To establish plain error, the appellant bears the burden of demonstrating that an error constituted an obvious defect in the

proceedings that affected his or her substantial rights. *State v. Eitzman*, 3d Dist.
Henry No. 7-21-03, 2022-Ohio-574, ¶ 42. Under this standard, "the appellant must
demonstrate that there is a reasonable probability that, but for the trial court's error,
the outcome of the proceeding would have been otherwise." *State v. Bradshaw*,
2023-Ohio-1244, --- N.E.3d ---, ¶ 21 (3d Dist.). Appellate courts take "[n]otice of
plain error * * * with the utmost caution, under exceptional circumstances and only
to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372
N.E.2d 804 (1978), paragraph three of the syllabus.

Legal Analysis

**{¶34}** In this case, the trial court asked if there were any objections to the
jury instructions. In response, neither party objected. For this reason, Johnson
concedes in her brief that the plain error standard of review applies to this challenge.
On appeal, she argues that the trial court did not correctly instruct the jury on the
definition of possession. The trial court instructed the jury on this matter as follows:

> Possession is a voluntary act if th[e] possessor knowingly procured or
> received the item, or wa[s] aware of her control thereof for a sufficient
> period of time to have ended her possession. *Possess or possession
> means having control over a thing or substance*.
>
> A person has possession when she knows that she has the object on or
> about her person, her property, or she p[l]aces it where it is accessible
> to her use or direction and she has the ability to direct or control its
> use.
>
> Joint Possession, two or more persons may have possession if together
> they have the ability to control it, exc[l]usive of others.

-15-

* * *

> Ownership is not necessary. A person may possess or control property belonging to another.

(Emphasis added.) (Tr. 226-227). These instructions closely follow the wording of the Ohio Jury Instructions that define possession. *Ohio Jury Instructions*, CR Section 417.21 (Feb. 2023). *State v. Frye*, 2018-Ohio-894, 108 N.E.3d 564, ¶ 107 (3d Dist.) (considering adherence to the wording of OJI to be of significance in evaluating challenges to jury instructions).

**{¶35}** However, Johnson argues that the trial court's jury instruction was incorrect because it did not include all of the wording in the statutory definition of possession that is contained in R.C. 2925.01(K). This definition reads as follows:

> *'Possess' or 'possession' means having control over a thing or substance*, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.

(Emphasis added.) R.C. 2925.01(K). In its jury instructions in this case, the trial court incorporated the italicized portion of R.C. 2925.01(K) but omitted the remainder of this section.

**{¶36}** In the prior assignment of error, we concluded that the State produced evidence beyond Johnson's mere proximity to the illegal drugs in her bedroom at the time of discovery to establish the element of possession. This same evidence also went far beyond establishing that Johnson had "mere access" to the illegal drugs "through ownership or occupation of the premises" where the drugs were located.

-16-

Given the other evidence presented by the State, we conclude that the outcome of this proceeding would have been no different if the trial court had told the jurors that they could not find possession in a situation where the State had only produced evidence of "mere access."  R.C. 2925.01(K).

{¶37} Further, we also note that, in answering a question submitted by the jury, the trial court gave the following instruction: "a person has possession when she knows that she has the object on or about her person, her property, or places where it's accessible to her use or direction, and has the ability to direct or control its use * * *."  (Tr. 238).  In this statement, the trial court defined possession with reference to knowledge, accessibility, and ability.  While not containing the wording of the final portion of R.C. 2925.01(K), this instruction does indicate that mere access does not, by itself, constitute possession.  To follow this instruction on possession, the jury would have to find that Johnson had more than "mere access" as defined by R.C. 2925.01(K).  These observations reinforce our conclusion that the outcome of the proceeding would not have been different even if all of the wording of R.C. 2925.01(K) had been included in the jury instructions.

{¶38} In conclusion, Johnson has not identified an error that affected her substantial rights in this case.  Further, even if the omission of the final portion of R.C. 2925.01(K) had constituted an error, she did not demonstrate a reasonable probability existed that the outcome of this proceeding would have been different if such wording had been included in the jury instructions.  Since Johnson has failed

-17-

to carry the burden of establishing plain error, her first assignment of error is overruled.

### *Conclusion*

**{¶39}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgments of the Crawford County Court of Common Pleas are affirmed.

***Judgments Affirmed***

**MILLER, P.J. and WALDICK, J., concur.**

**/hls**